MAYOR AND CITY COUNCIL OF THE CITY OF NASH-
VILLE *v.* CHAS. SHEPERD.

1. SPECIAL JURIES. *Selection and constitution of.* The law, in its provision
for a special jury, contemplates the selection of men with reference to
their superior competency and fitness to try and determine the parti-
cular issues involved in the case, and not with reference to their rela-
tion to the parties, as being or not being of their race or color.

2. SAME. *Same.* It was, therefore, erroneous for the Circuit Court to
select one-half of a jury, upon a party's application, solely because
they were colored men.

Cases cited: 2 Tidd's Practice, 788; Black. Comm., Book 3, 357,

Code cited: §§3981, *et seq.*, 4029, 3993-7.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court. NATHANIEL
BAXTER, Judge.

JOHN LELLYETT for Mayor and City Council of
Nashville.

JNO. TRIMBLE, BROWN, MARTIN and WADE for
Sheperd.

DEADERICK, J., delivered the opinion of the Court.

This suit was originally instituted against the Mayor
and City Council of the City of Nashville and the
Richland Creek Turnpike Company by defendant in
error, Sheperd.

A *nolle prosequi* was subsequently entered as to the turnpike company, and at the January Term, 1871, of the Circuit Court of Davidson County, a verdict was rendered in favor of Sheperd against the city for $500, and judgment thereon pronounced, from which the city has appealed to this Court.

The suit was brought by Sheperd, a man of color, for injuries received by him upon one of the streets of the city, by reason of its being out of repair, as alleged in his declaration. The bill of exceptions shows, that upon the calling of the cause for trial, the plaintiff, by his counsel, stated to the Court the cause of action, and that the plaintiff was a colored man, and thereupon moved the Court to summon and empannel a special jury, to consist one-half of colored men and one-half of white men, upon consideration whereof the Court so ordered; and to this action of the Court the defendant then and there excepted. The jury, however, under the order of the Court, consisting of six white and six colored men, was empanneled, and rendered their verdict as before stated. Objection is taken by plaintiff in error to the mode in which the jury was selected, and the principle upon which it was constituted.

Sec. 3981 of the Code, *et seq.*, prescribe the manner of appointment and the qualifications of jurors.

The duty and power of appointment belong primarily to the County Court, and in the selection of jurors they are required to select such jurors only as they know, or have good reason to believe, are es-

teemed in the community for their integrity, fair character and sound judgment, and with certain qualifications as to residence, etc. Such are the qualifications that the law regards essential to the right performance of the high trusts and responsible duties imposed upon juries. Such men can be found in every civil district of every county of the State, and if they are not found in the jury-box it is because the duty imposed on their selection has not been faithfully performed.

But by §4029 of the Code, it is provided, that on motion of either party, in any civil action, a special jury may be ordered and summoned, if, in the opinion of the Court, it is proper, the additional cost to be taxed to the losing party. And where special juries are allowed by law, the Court shall designate good and lawful men, and the Sheriff shall summon them *instanter* from the body of the county. Code, §§3993, 3997. The cases in which "special juries are allowed by law" are not specified or defined by the Code, but §4029 authorizes such a jury, on motion of either party, "if in the opinion of the Court it is proper." In 2 Tidd's Practice, 788, it is said that "special juries appear to have been first introduced in the King's Bench, upon trial at bar of causes of great consequence."

The practice was for an officer of that Court, called the Master, to name forty-eight freeholders of the rank and dignity of Esquires, and have the parties alternately strike the names of all but a sufficient nnmber

to constitute a jury, and the remaining number were summoned by the Sheriff to try the cause. The purpose seems to have been to obtain jurors of higher qualifications than those usually returned in the ordinary mode, for the trial of causes; or, as Blackstone expresses it, "Special juries were originally introduced in trials at bar, when the causes were of too great nicety for the discussion of ordinary freeholders, or where the Sheriff was suspected of partiality." Black. Comm., Book 3, 357. He adds that by Statute 3 Geo. 2, Ch. 25, either party is entitled, upon motion, to have a special jury struck upon the trial of any issue, upon paying the extraordinary expense, a provision very similar to that contained in our Code, §4029. We can see a reason for, and fitness in, the summoning of a jury of merchants to try a question of commercial law between two parties, irrespective of their class or nationality, but there is no more reason why half of a jury should be black and half white, to try an issue between a man of African descent and a white man, than there is that half of a jury should be Irish and half French to try an issue between an Irishman and a Frenchman. We think the law, in its provision for a special jury, contemplates the selection of men with reference to their peculiar, or at least superior competency and fitness to try and determine the particular issues involved in the case, and not with reference to their relation to the parties, as being or not being of their race or color.

The law, as it now exists, makes no such distinc-

tion; and while the Courts have no right to exclude any one from the jury-box, otherwise qualified, on account of race or color, the law makes it the duty of the County Court to select as jurors citizens of the county, of integrity, fair character and sound judgment, and these considerations should control the Circuit Judge when he exercises the power of designating jurors, which it seems he may do under the provisions of §§3993 and 3997 of the Code.

Ordinarily, we would not undertake to control the exercise of the discretion of the inferior Courts, but in this case we can see from the record, that the Court selected one-half of the jury upon plaintiff's application, solely upon the ground that they were colored men, and we regard this as so fundamentally erroneous, and so likely to lead to mischievous consequences and pernicious results, that we feel constrained to reverse the judgment and remand the cause for a new trial.