**J. C. LOVE and McKinley McPherson, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**J. L. (Pete) McGEE et al., Defendants.**

**Civ. A. No. 4328.**

United States District Court
S. D. Mississippi,
Jackson Division.

March 17, 1968.

---

L. A. Aschenbrenner, Jackson, Miss., for plaintiffs.

Joe T. Patterson, Atty. Gen. of Miss., and Will S. Wells, Asst. Atty. Gen., of Miss., Jackson, Miss., for defendants.

NIXON, District Judge.

This is a class action attacking the jury selection system employed in the Second Judicial District of Hinds County, Mississippi. The plaintiffs allege systematic exclusion of Negroes from juries in the Second Judicial District and seek a mandatory injunction which would require the defendants to refrain from discrimination in the jury selection process.

The case was submitted to this Court on stipulation and memorandum briefs of the parties. The stipulation establishes the current percentage composition of the population of the Second Judicial District at approximately 68% Negro and 32% white.[1] The parties stipulated that from April, 1940, through April, 1962, no more than 1% of the names on the master jury lists in the District were those of Negroes. The number of Negroes appearing on the master lists after 1962 was stipulated to be as follows:

| Year | Names in Jury Wheel | White | Negro | Unknown | Percentage Negro |
|------|------|------|------|------|------|
| 1963 | 387 | 340 | 13 | 34 | 3.7% |
| 1964 | 394 | 340 | 10 | 44 | 2.5% |
| 1965 | 650 | 580 | 20 | 50 | 3.1% |
| 1966 | 610 | 530 | 76 | 4 | 12.5% |
| 1967 | 933 | 817 | 114 | 2 | 12.2% |
| 1968 | 1065 | 868 | 162 | 35 | 15.2% |
| 1968 [2] | 1452 | 1088 | 329 | 35 | 22.0% |

The parties further stipulated that the voter registration books, the exclusive source for juror names in the Second Judicial District,[3] are coded by race; and that—at the time of filing of the complaint in this suit—persons who had

1. The parties stipulated that there had been no significant increase or decrease in any age or racial group in the Second Judicial District since the 1960 Census, which showed the Negro-White percentage ratio at approximately 68%–32%.

2. The second figure for 1968 reflects the additional names added to the master jury list after passage of Senate Bill No. 2460 by the Mississippi legislature which made females eligible for jury service.

3. Miss.Code Ann. sec. 1762–03 (Supp.1966) authorizes members of the Board of Supervisors to use only the voter registration rolls and land assessment rolls as sources in the selection of master jury lists. However, an order by the circuit judge is necessary to authorize use of the land assessment rolls. Miss.Code Ann. sec. 1762–01 (Supp.1966). No such order had been entered for the Second Judicial District.

registered to vote with a Federal voting examiner[4] were excluded from consideration for jury service in the District. As of April 13, 1968, 2868 persons in the Second Judicial District had registered with a Federal examiner, and of that number, 2862, over 99%, were Negroes.

■■  The plaintiffs allege that the disparity between the percentage of Negro population in the Second Judicial District, 68%, and the percentage of those placed on the jury lists, from less than 1% prior to 1963 to a maximum of 22% in 1968, is a prima facie showing of purposeful discrimination on the part of the defendants, which the defendants failed to rebut. This Court agrees. It is well settled that the long-continued absence or underrepresentation of Negroes on juries raises a prima facie case of discrimination.[5]  Such a showing places a burden on the State to prove that the absence or underrepresentation results from something other than purposeful discrimination.[6]  The State has failed to discharge that burden in this case. In fact, the stipulation that persons registered to vote by a Federal voting examiner—99% of whom are Negroes—are excluded from consideration for jury service is practically an admission of discrimination.

■  Furthermore, the coding of the voter registration lists so that a voter's race is readily identifiable is closely akin to Georgia's use of racially segregated tax digests as its juror source, which was disapproved by the Supreme Court in Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, (1967), and by the Fifth Circuit in Pullum v. Greene, 396 F. 2d 251 (5th Cir. 1968). That is, "the opportunity for discrimination was present" and the Court "cannot say on this record that it was not resorted to" by the supervisors.[7]  The discrimination against Negroes shown here constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment, and once such racial discrimination is established, "the Court must order that it be discontinued." Potts v. Flax, 313 F.2d 284, 289 (5th Cir. 1963). This Court will therefore issue a mandatory injunction ordering defendants to cease from discrimination in the jury selection process.

■  However, the Court finds no constitutional shortcoming in the statutory scheme for juror selection in Mississippi. The juror source lists authorized by Miss. Code Ann. sec. 1762–03 (Supp.1966), were carefully considered and approved by this Court in Raiford v. Dillon, 297 F.Supp. 1307 (S.D.Miss. March 10, 1969). Once the master jury list is compiled by the Board of Supervisors and the jury wheel filled, the grand and petit jurors are drawn by a random selection process. See Miss.Code Ann. sections 1779 and 1772 (Supp.1966). The constitutional deficiency arises in this case from the improper manipulation of the selection process by some of the defendants and

---

4. See 42 U.S.C. sec. 1973a et seq.

5. See Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966), cert. denied, and cases discussed therein; United States ex rel. Seals v. Wiman, 304 F.2d 53, 67 (5th Cir. 1962): "Very decided variations in proportions of Negroes and whites on jury lists from racial proportions in the population, which variations are not explained and are long continued, furnish sufficient evidence of systematic exclusion of Negroes from jury service." See also, e. g., Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964); Eubanks v. Louisiana, 356 U.S. 584, 78 S. Ct. 970, 2 L.Ed.2d 991 (1958); Patton v.

Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935).

6. See Patton v. Mississippi, 332 U.S. 463, 466, 68 S.Ct. 184, 186, 92 L.Ed. 76 (1947), to the effect that once a prima facie case is made out by showing continued underrepresentation of Negroes on jury lists, the burden shifts to the State "to try· to justify such an exclusion as having been brought for some reason other than racial discrimination."

7. See Whitus v. Georgia, 385 U.S. 545, 552, 87 S.Ct. 643, 647, 17 L.Ed.2d 599 (1967).

their predecessors in office. Thus, in adapting this Court's "judicial power to the needs of the situation," [8] the Court sees no reason to require deviation from the State of Mississippi's statutory selection process, but only the necessity to enjoin the defendants from improper discrimination in the utilization of the statutory mechanism.

Accordingly, the Court shall require the Board of Supervisors to empty its present jury wheel prior to the scheduled June term of the Second Judicial District of Hinds County. In refilling the wheel, the supervisors shall be enjoined from engaging in any practice which involves discrimination by reason of race and from failing to take all necessary steps to assure that the master jury lists reflect a representative cross-section of the adult population of the Second Judicial District of Hinds County. The other county officials joined as defendants in this cause are likewise enjoined from engaging in any act or practice which is likely to result in discrimination by reason of race in the selection of jurors. The supervisors are further directed to make their selections for the master jury lists in such a manner that the racial composition of those placed on the lists is reasonably close to the racial composition of the adult population of the Second Judicial District of Hinds County.

To assure that the defendants comply with the dictates of this injunction, a written report shall be given by the Board of Supervisors to this Court within 14 days of each refilling of the jury wheel. This report should include the names and race of all persons placed in the jury box. The Supervisors are further directed to maintain records available for public inspection showing the names and race of persons (1) not found by the sheriff in executing the venire facias, and (2) excused by the circuit judge, indicating the reason for such excuses.

A judgment accordingly may be presented to the Court.

---

8. *See* Alabama v. United States, 304 F.2d 583, 591 (5th Cir. 1962).