George **FORD**, Otis Parker, Jr., Theodore Bell, Sr., Willie Leon Duffin, Pauline Sias, Gracie Mae Green, and Gracie Lee Ford, individually and on behalf of those similarly situated, Plaintiffs,

v.

Frank **WHITE**, Dr. G. L. Johnson, Pauline Scott, Archie I. Irwin and W. Ed Holcomb, Jr., as members of the Board of Supervisors of Issaquena County, Mississippi; Honorable Ben Guider, as Circuit Court Judge of Issaquena County, Mississippi; Mrs. John Allen Darnell, as Sheriff of Issaquena County, Mississippi; John Allen Darnell, as Deputy Sheriff of Issaquena County; Mary T. Vandevender, as Clerk of the Circuit and Chancery Courts of Issaquena County, Mississippi, and Marshall L. Spiars, as Justice of the Peace of District Four of Issaquena County, Mississippi, Defendants.

Civ. A. No. 1230.

United States District Court
S. D. Mississippi, W. D.

April 7, 1969.

Robert B. Fitzpatrick, L. A. Aschen-brenner, Jackson, Miss., for plaintiffs.

E. C. Clements, Rolling Fork, Miss., Will S. Wells, Donald Lacy, Jackson, Miss., for defendants.

NIXON, District Judge.

This is a class action seeking injunctive relief to preclude discrimination on the basis of race and sex in the jury selection system of Issaquena County, Mississippi. In its racial discrimination aspect, this action is similar to the ones with which this Court has recently been concerned in Raiford v. Dillon, 297 F.Supp. 1307 (S.D.Miss., March 10, 1969) and Love v. McGee, 297 F.Supp. 1314 (S.D.Miss., March 17, 1969), except that here plaintiffs rely on alleged discrimination in the drawing of names for petit and grand jury panels, in addition to discrimination in the selection of names which are put into the jury box.

The 1960 Census reflects the adult population of Issaquena County to be 1,721, of which 1,081—or approximately 62%—were Negroes. Dr. Laurence B.

Morse who testified for the plaintiffs as a statistical expert estimated the Negro adult population of Issaquena County to be 61.3% and 61.8% of the county's total adult population in 1966 and 1967, respectively. The Court will assume for the purposes of this opinion that the adult population of Issaquena County is approximately 61% to 62% Negro.

Since Issaquena County is a very small county the Board of Supervisors until April 1968 followed the practice of putting into the jury box the names of all persons in the county qualified for jury service. Voter registration lists are the sole juror source in Issaquena County;[1] therefore, this involved merely placing the names of all qualified electors into the jury box.[2] However, for at least 10 years prior to April 1965 there were no Negroes qualified as electors in Issaquena County, as was stipulated to by the parties, and for at least 11 years prior to April 1966 no Negroes were placed on the jury rolls in Issaquena County because none were qualified as electors. In April 1966, the first time Negroes were qualified to vote in Issaquena County, the names of all 91 Negroes so qualified[3] were placed in

---

1. Miss.Code Ann. sec. 1762 (Supp.1966). That section also qualifies resident freeholders for jury service but a court order must be entered under Miss.Code Ann. sec. 1762-01 (Supp.1966), before such persons are eligible for jury service. No such order has been entered in Issaquena County.

2. Mrs. Mary Vandevender, Issaquena County Circuit Court Clerk, testified that the names of nearly all of those persons qualified for jury service were placed in the jury box again in April 1968. The parties stipulated that as of March 31, 1968, there were 416 qualified white male electors and 331 qualified Negro male electors—a total of 747. Of this number, 567 names were placed in the jury box—302 Negro, 250 white and 16 unknown. When women were qualified to vote by the Mississippi legislature, House Bill No. 895, General Acts of the 1968 Regular Legislative Session, the Issaquena County Board of Supervisors added the names of 47 women to the jury

box—23 Negro and 24 white. This was done in July 1968. The parties stipulated that as of July 1, 1968, there were approximately 381 Negro females and 332 white females registered to vote in Issaquena County.

3. The parties stipulated that the names of registered voters whom the defendant circuit court clerk knew to be delinquent in the payment of poll taxes and not entitled to an exemption certificate were not placed in the jury wheel in 1966. At that time a person's right to vote in Mississippi was conditioned on the payment of a poll tax. See Mississippi Constitution, Sections 241, 243; Miss.Code Ann. sections 3130, 3160, 3235 (1942). Although Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169, ruled the Virginia poll tax unconstitutional on March 24, 1966, the Court will not infer intentional discrimination on the part of Issaquena County officials in continuing to observe

the jury box. The following table shows the racial composition of the Issaquena County jury wheel as constituted in April 1966 and thereafter:

| Date | Total in Jury box | Whites | Unknown | Negro | Percentage Negro |
|---|---|---|---|---|---|
| April 1966 | 320 | 223 | 6 | 91 | 28% |
| April 1967 | 460 | 283 | 2 | 175 | 38% |
| April 1968 | 568 | 250 | 16 | 302 | 53% |
| July 1968[4] | 615 | 274 | 16 | 325 | 53% |

Issaquena County holds two Circuit Court terms each year. The following table reflects the racial composition of the jury panels drawn from the jury box for terms subsequent to April 1966:[5]

| Court term | Number Drawn | Negroes | Whites | Percentage Negro |
|---|---|---|---|---|
| Aug. 1966 | 62 | 10 | 52 | 16% |
| Feb. 1967 | 62 | 15 | 47 | 24% |
| Aug. 1967 | 62 | 11 | 51 | 18% |
| Feb. 1968 | 62 | 6 | 56 | 9.6% |
| Aug. 1968 | 62 | 18 | 44 | 29% |
| Feb. 1969 | 62 | 17 | 45 | 27% |

The voter registration lists in Issaquena County do not contain racial identification, and persons registered to vote by federal voting examiners are considered in the jury selection process in the same manner as persons registered by the county registrar.[6]

The plaintiffs rely heavily on the "probability" involved in the selection of the jury panels here to prove discrimination.[7] Dr. Laurence B. Morse testified that, given the composition of the jury box as set out above, the probabilities of the panels appearing as they did were one in 25 million. However, Dr. Morse admitted that this "probability" referred to the chance that the exact figures and percentages relative to the six panels in question would occur again exactly as they had between August 1966 and February 1969. Dr. Morse also testified as to the probability of each of the six panels chosen between August 1966 and February 1969 con-

the Mississippi poll tax qualification, which had not been held unconstitutional. These officials undoubtedly were uncertain of the impact of the *Harper* decision—if they were aware of it at all—and cannot be said to have acted unreasonably in following the state law, absent some indication that it was invalid or that they should do otherwise.

4. The Board of Supervisors added the names of 47 women to the jury box after passage of the statute making women eligible for jury service in Mississippi. *See* Note 2, *supra.*

5. It should be noted that only four juries were required for trials during this period. These juries were composed of 9 whites and 3 Negroes, 8 whites and 4 Negroes, 6 whites and 6 Negroes, and 5 whites and 7 Negroes, respectively.

6. This Court held both of these factors to be indicative of discrimination in Love v. McGee, 297 F.Supp. 1314 (S.D.Miss., March 17, 1969).

7. The plaintiffs draw their argument primarily from Finkelstein, The Application of Statistical Decision Theory to The Jury Discrimination Cases, 80 Harv.L. Rev. 338 (1966).

taining the percentage Negro representation which they did. The probability in each of these instances was well in excess of the 5-in-100 chances standard which Dr. Morse used in determining whether discrimination were present or not. He stated that these figures did not indicate any discrimination at all. However Dr. Morse later retracted this testimony and stated that he was in error.

When questioned as to the cause of the disparity between the percentages of Negroes in the jury box and those pulled from the box for the jury panels between August 1966 and February 1969, Mrs. Mary Vandevender, Issaquena County Circuit Court Clerk, offered no explanation. She testified that names for the jury panel were drawn from the jury box at random in open court in the presence of herself, a justice of the peace and a deputy sheriff. She testified that only when the persons whose names were drawn were known to be dead were such persons not placed on the panel. She recalled only one instance in which a name drawn was that of a dead person.

## I.

■ The Court finds no problem concerning the question of discrimination during the process of selecting names to be placed in the jury box. Here, as in Raiford v. Dillon, the defendants and their predecessors in office were without power to increase the percentage of Negroes placed in the jury box in Issaquena County prior to 1966. Mississippi law allows use of only two sources for jurors names—voter registration lists and land assessment rolls.[8] Until 1966 no Negroes were registered to vote in Issaquena County. However, from the time that Negroes became registered to vote until April 1968 the Board of Supervisors placed the names of all Negroes eligible to vote in the jury wheel or box. In April 1968, 53% of the names placed in the jury box were Negro, although only 44% of those qualified for jury service were Negro. And in July 1968 Negroes again constituted 53% of the names in the jury box, although only 49% of those eligible for jury service were Negro.[9]

■ Undoubtedly the lack of Negro voter registration prior to 1966 might be attributable to some of the defendants or their predecessors, but since 1966 Negroes have been freely registered in Issaquena County and once registered their names have been placed in the jury box. As to this phase of the jury selection process, the Court finds that any discriminatory practices which may have existed have ended. Although an injunction may issue even though the acts complained of have ceased,[10] the Court feels that such an injunction is not warranted on these facts. Any discriminatory practices ended well over two years ago and have not recurred.

■ The Court finds that any underrepresentation of Negroes on the jury wheels since 1966 is solely attributable to the failure of Negroes to register to vote in Issaquena County. Such underrepresentation because of failure to register to vote does not constitute discrimination. See Grimes v. United States, 391 F.2d 709, 709–710 (5th Cir. 1968): "a group of persons who have failed to register to vote has never been considered to constitute a 'cognizable group'" within the meaning of those decisions holding it a denial of equal protection if such a group is inadequately represented in the jury selection process. Any underrepresentation here, moreover, is minimal. In the two most recent instances the Issaquena County jury wheel has contained Negro representation of 53% as compared to an adult Negro pop-

8. No order has been entered in Issaquena County authorizing the use of land assessment rolls. See Note 1, supra.

9. These percentages are derived from the figures given in Note 2, supra.

10. See, e. g., United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Pullum v. Greene, 396 F. 2d 251 (5th Cir. 1968); United States v. Atkins, 323 F.2d 733 (5th Cir. 1965).

ulation in Issaquena County of 61% to 62% of total population. These figures were obtained even though Negroes made up only 44% and 49%, respectively, of the total of those persons eligible for jury service.[11]

## II.

As to the claim of discrimination 'in selection of jury panels, the plaintiffs urge that the Court apply the branch of mathematics known as statistical decision theory.[12] Even if the Court were inclined to adopt that theory, it would be impossible to do so on the record in this case. Dr. Morse's testimony that the numbers and percentages of Negroes serving on panels constituted between August 1966 and February 1969 would re-occur in that particular order only once in 25 million times is obviously meaningless in the decision of this case. The Court finds his testimony as to the probabilities involved as to each of the six panels chosen between August 1966 and February 1969 to be instructive, but Dr. Morse retracted that testimony. Since the plaintiffs have wholly failed in developing a record upon which the statistical decision theory might be applied, the Court will apply its "judicial intuition" [13] in deciding this case.

■ The burden is on the plaintiffs to prove discrimination in the selection system. Tarrance v. Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903). The testimony of Mrs. Vandevender was very strong to the effect that there was no exercise of discretion whatsoever in the drawing of names from the jury box for service on the jury panels. She testified that the jury wheel was spun, names were drawn from the wheel at random and that once a name was drawn that person was placed on the panel unless he was known to be dead. She recalled only one instance in which a person's name had not been placed on the panel because of death. The Court accepts this uncontroverted testimony of Mrs. Vandevender as to the jury selection procedure employed, and is not willing to find discrimination in a wholly random selection procedure. As noted above, the burden is on the plaintiffs to establish discrimination and the plaintiffs have come forth with no convincing evidence whatsoever to indicate impropriety or discrimination in the selection process.

In this regard it should be noted that Issaquena County is a very small county. Relatively large percentage differences between Negro representation in the jury box and on the panels may involve a difference in representation of only a very few persons. The small population of Issaquena County also explains the large number of repeaters on the jury panels, which counsel for plaintiffs made much of at trial.

Since the plaintiffs have wholly failed to establish racial discrimination in the jury selection process, an injunction on that basis will not lie. It remains, therefore, only to consider the question of alleged discrimination on the basis of sex.

## III.

■ The 1968 regular session of the Mississippi legislature passed a statute making women eligible for jury service.[14] Immediately after passage of that statute, the Issaquena County Board of Supervisors added the names of 47 women to the jury box, which already contained the names of 568 males. At that time there were approximately 713 women qualified for jury service in Issaquena County and 747 men. Thus, women were substantially underrepresented in the jury selection process. In Bass v. Mississippi, 381 F.2d 692 (5th Cir. 1967), the Fifth Circuit intimated that were it faced with the question of statutory exclusion of women from juries it would probably rule such statute un-

11. See the thorough discussion of this matter in Raiford v. Dillon, 297 F.Supp. 1307 (S.D.Miss., March 10, 1969).

12. This theory is fully discussed in the Finkelstein article cited in Note 7, *supra*.

13. As Mr. Finkelstein terms the process by which courts have resolved jury discrimination cases.

14. House Bill No. 895, General Acts of the 1968 Regular Legislative Session.

constitutional. Had the Mississippi legislature not passed the statute qualifying women for jury service, this Court would of course have to face the constitutional question of exclusion of women from juries. But the statute was passed and women were placed in the jury box in Issaquena County shortly thereafter. The plaintiffs presented no evidence that women were discriminated against by the defendants here other than the stipulated figures as to the number of women's names placed in the jury wheel. Until the legislature qualified women for jury service, the defendants were constrained to select only males for jury service. As soon as the legislature acted, these defendants took steps to place women's names in the jury box. Although the number placed in the jury box was relatively small, the Court does not find that these defendants were guilty of any discrimination. They acted promptly and in good faith as soon as they had authority to do so.

 Of course, should the defendants fail to place women's names in the jury box in numbers fairly commensurate with their population in the county, the doors of this Court are open and the plaintiffs are free to come forward and make a showing of discrimination. However, this Court does not feel that an injunction should issue before the defendants have had a real opportunity to implement the Mississippi statute passed less than a year ago when there has been no showing of any effort or intent on the part of the defendants to subvert or undermine the purposes of that statute. "Relief by injunction is discretionary and may be denied when the court does not deem there is danger of a repetition of unlawful conduct." Walling v. Florida, Hardware Co., 142 F.2d 444 (5th Cir. 1944), quoted with approval in United States v. Board of Education of Greene County, Mississippi, 332 F.2d 40, 46 (5th Cir. 1964). Not only does this Court find that there is no danger of repetition of underrepresentation of women in the Issaquena County jury selection procedure, but it also observes

that the jury box as constituted in July 1968 was not necessarily "unlawful conduct."

Accordingly, the Court will refuse the plaintiffs' request for an injunction since there is no showing of either racial discrimination or differentiation on a basis of sex to warrant such relief. A judgment to that effect may be presented to the Court.