**Percy Lee GOODE, Petitioner,**

v.

**Tom COOK, Superintendent of Mississippi State Penitentiary, Respondent.**

**Civ. A. No. 4404.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Sept. 26, 1969.

W. S. Moore, Jackson, Miss., for petitioner.

Guy N. Rogers, Asst. Atty. Gen., Jackson, Miss., for respondent.

OPINION OF THE COURT

DAN M. RUSSELL, District Judge.

Petitioner, a Negro male presently in the custody of the respondent at the Mississippi State Penitentiary, Parchman, Mississippi, filed his petition in forma pauperis, for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his conviction for rape and sentence for life should be set aside on the grounds, among others, that Negroes were systematically excluded from the grand jury which indicted him and the petit jury which convicted him. The matter is before the Court on petitioner's motion for summary judgment based on the pleadings, affidavits, admissions, stipulations and briefs, and without a hearing or the presence of petitioner.

Petitioner was tried and convicted in November 1961 in the First Judicial District of Hinds County, Mississippi. On appeal his conviction was affirmed by the Mississippi Supreme Court in Goode v. State, 245 Miss. 391, 146 So.2d 74. In 1968, petitioner applied for leave to file a petition for a writ of error coram nobis according to the procedure outlined in Section 1992.5, Mississippi Code of 1942, Recompiled. His application was denied on December 9, 1968, by the Supreme Court of Mississippi, without a formal opinion, his application being docketed as Misc. #78. Petitioner and respondent have stipulated in writing that the grounds for the application were the same as here presented, and that the matter was heard on its merits by the Supreme Court of Mississippi. Respondent admits that petitioner has exhausted the remedies available in the courts of the State of Mississippi, as required by 28 U.S.C. § 2254.

Petitioner shows that the First Judicial District of Hinds County, Mississippi, at the time of his trial and conviction, was and is now composed of Supervisor Districts 1, 4 and 5. According to the U. S. Bureau of Census, U. S. Census of Population for 1960, the First Judicial District had within it 109,104 whites and 63,970 Negroes, and of persons of the age of 21 years and over, all of Hinds County had 31,548 whites and 16,139 Negroes. Under the then existing Mississippi statutes, no person was eligible for jury duty unless he was a qualified elector and able to read and write. To be a qualified elector, one had to pay poll taxes for the two preceding years and, under the examination of the County Registrar, be able to read, write and give a reasonable interpretation of any section of the Mississippi Constitution. Jury lists were compiled from voter registrations. Of the total population of males in Hinds County, over 21 years of age, and who were potential voters, 66.16 per cent were white and 33.84 per cent were Negro. Petitioner offered a verified list of names appearing on the Voter Registration books for the First Judicial District for the year 1961, coded according to race and sex, showing that out of a total of 2,683 names of persons coded as males, 55 were Negroes, or approximately two per cent. Under this percentage, petitioner concedes there may have been as many as three Negroes on the grand jury which indicted him, but states under oath that there were no Negroes on the petit jury which tried him. Further evidence offered by petitioner of systematic exclusion of Negroes from juries in Hinds County, including the First Judicial District, is a statement of the Circuit Clerk, in office for the last nine consecutive years, that from 1949 to 1962 less than 4000 Negroes had cumulatively been registered as voters whereas during the same period between 45,000 and 50,000 whites had been registered. A statement prepared by Major C. McDaniel, federal voting examiner of Hinds County, reflects that during the period of federal voter registration, 1965–1969, over 12,000 Negroes have registered in the county, more than 9,000 being in the First Judicial District. Eligibility on the federal voting lists does not depend on the payment of poll taxes, literacy, etc.

The statistics above, in the absence of any rebuttal on the part of respondent, lead to the inescapable conclu-

sion that in 1961 the juries in the First Judicial District of Hinds County which indicted and tried petitioner had at most only a token Negro representation on them. The burden to prove discrimination is initially on petitioner; however, once a prima facie case is made, the burden shifts to the respondent. Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed. 2d 25, and Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

■ In a recent case, Love v. McGee, 297 F.Supp. 1314, United States District Court for the Southern District of Mississippi, Jackson Division, a class action attacking the jury selection system employed in the Second Judicial District, the Court in an opinion dated March 19, 1969, considered statistics similar to those presented here, and found the jury selection process to be discriminatory.

With respect to state court action, as stated in Harper v. State, 251 Miss. 699, 171 So.2d 129: "Since 1880 it has been settled law that systematic and discriminatory exclusion of Negroes from jury service violates the fourteenth amendment of the United States Constitution." As early as 1907, the Mississippi Supreme Court found that purposeful exclusion of Negroes from jury venires was unconstitutional. Farrow v. State, 91 Miss. 509, 45 So. 619. Harper, as well as two later decisions, Black v. State, 187 So.2d 815, and Shinall v. State, 187 So.2d 840, have reversed lower court convictions where proper objection was made to the composition of juries before and at trial. Where no objections were made before and at time of trial, and are made for the first time in error coram nobis proceedings, the Supreme Court of Mississippi, in Thompson v. State, 188 So.2d 239, concede "there is some doubt raised as to whether or not there is an effective waiver of a federal constitutional right by the failure to raise such right during the trial."

A question affecting federal rights raised in post conviction proceedings is a federal question, and, of course, whether or not there was a valid waiver of the objection to the composition of the juries at the time of trial. A valid waiver of constitutional rights can be made, but as held by the Fifth Circuit Court of Appeals a number of times, each case must be decided on its own facts and with the application of the time tested definition of "waiver" as expressed in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, "an intentional relinquishment or abandonment of a known right or privilege," and as re-emphasized in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. See United States ex rel. Goldsby v. Harpole, 263 F.2d 71; Whitus v. Balkcom, 333 F.2d 496; and Cobb v. Balkcom, 339 F.2d 95.

■ Petitioner was less than eighteen years of age at the time of his trial. The original attorney employed by petitioner's parents to represent him was unable to do so, and petitioner was represented by a young attorney who had been admitted to the bar for less than eight months. Both petitioner and this attorney, by undisputed affidavits on file herein, state that petitioner did not know that he was entitled to be indicted and tried by juries from which Negroes had not been systematically excluded on account of race; that petitioner did not have this right, as well as others, explained to him; that there were no Negroes on the trial jury; and that the attorney had no authority from petitioner to waive any of his constitutional rights. The Court concludes that under these facts there was no effective waiver. For similar conclusions reached in other federal cases arising in Mississippi, see Ellzey v. Breazeale, D.C., 277 F.Supp. 948; Gordon v. Breazeale, D.C., 246 F.Supp. 2, and Smith v. Breazeale, D.C., 245 F. Supp. 978.

Petitioner is entitled to a summary judgment on his application for a writ of habeas corpus, and is entitled to be re-indicted and re-tried within a reasonable time by properly constituted juries.

An order to this effect may be submitted together with an application for bail.