## PATTON *v.* MISSISSIPPI.

No. 122.   Argued November 21, 24, 1947.—Decided December 8, 1947.

464

*Thurgood Marshall* argued the cause for petitioner. With him on the brief was *Andrew Weinberger.*

*George H. Ethridge,* Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief was *Greek L. Rice,* Attorney General.

Mr. Justice Black delivered the opinion of the Court.

The petitioner, a Negro, was indicted in the Circuit Court of Lauderdale County, Mississippi, by an all-white grand jury, charged with the murder of a white man. He was convicted by an all-white petit jury and sentenced to death by electrocution. He had filed a timely motion to quash the indictment alleging that, although there were Negroes in the county qualified for jury service, the venires for the term from which the grand and petit juries were selected did not contain the name of a single Negro. Failure to have any Negroes on the venires, he alleged, was due to the fact that for a great number of years previously and during the then term of court there had been in the county a "systematic, intentional, deliberate and invariable practice on the part of administrative officers to exclude negroes from the jury lists, jury boxes and jury service, and that such practice has resulted and does now result in the denial of the equal protection of the laws to this defendant as guaranteed by the 14th amendment to the U. S. Constitution." In support of his motion petitioner introduced evidence which showed without contradiction that no Negro had served on the grand or petit criminal court juries for thirty years or more. There was evidence that a single Negro had once been

summoned during that period but for some undisclosed reason he had not served, nor had he even appeared. And there was also evidence from one jury supervisor that he had, at some indefinite time, placed on the jury lists the names of "two or three" unidentified Negroes. In 1940 the adult colored population of Lauderdale County, according to the United States Census, was 12,511 out of a total adult population of 34,821.

In the face of the foregoing the trial court overruled the motion to quash. The Supreme Court of Mississippi affirmed over petitioner's renewed insistence that he had been denied the equal protection of the laws by the deliberate exclusion of Negroes from the grand jury that indicted and the petit jury that convicted him. 201 Miss. 410, 29 So. 2d 96. We granted certiorari to review this serious contention.[1] 331 U. S. 804.

Sixty-seven years ago this Court held that state exclusion of Negroes from grand and petit juries solely because of their race denied Negro defendants in criminal cases the equal protection of the laws required by the Fourteenth Amendment. *Strauder* v. *West Virginia,* 100 U. S. 303 (1880). A long and unbroken line of our decisions since then has reiterated that principle, regardless of whether the discrimination was embodied in statute[2] or was apparent from the administrative practices of state jury selection officials,[3] and regardless of whether the system

---

[1] Petitioner also argued that his conviction was based solely on an extorted confession; that use of this extorted confession denied him due process of law; and that the case should be reversed for that reason. The view we take as to the systematic exclusion of Negro jurors makes it unnecessary to pass on the alleged extorted confession.

[2] *Bush* v. *Kentucky,* 107 U. S. 110, 122.

[3] *Ex parte Virginia,* 100 U. S. 339; *Neal* v. *Delaware,* 103 U. S. 370; *Carter* v. *Texas,* 177 U. S. 442; *Rogers* v. *Alabama,* 192 U. S. 226; *Norris* v. *Alabama,* 294 U. S. 587; *Hollins* v. *Oklahoma,* 295 U. S. 394; *Hale* v. *Kentucky,* 303 U. S. 613; *Pierre* v. *Louisiana,* 306 U. S. 354; *Smith* v. *Texas,* 311 U. S. 128; *Hill* v. *Texas,* 316 U. S. 400.

for depriving defendants of their rights was "ingenious or ingenuous." [4]

Whether there has been systematic racial discrimination by administrative officials in the selection of jurors is a question to be determined from the facts in each particular case. In this case the Mississippi Supreme Court concluded that petitioner had failed to prove systematic racial discrimination in the selection of jurors, but in so concluding it erroneously considered only the fact that no Negroes were on the particular venire lists from which the juries were drawn that indicted and convicted petitioner.[5] It regarded as irrelevant the key fact that for thirty years or more no Negro had served on the grand or petit juries. This omission seriously detracts from the weight and respect that we would otherwise give to its conclusion in reviewing the facts, as we must in a constitutional question like this.[6]

It is to be noted at once that the indisputable fact that no Negro had served on a criminal court grand or petit jury for a period of thirty years created a very strong showing that during that period Negroes were systematically excluded from jury service because of race.[7] When such a showing was made, it became a duty of the State to try to justify such an exclusion as having been brought about for some reason other than racial discrimination. The Mississippi Supreme Court did not conclude, the State did not offer any evidence, and in fact did not make any claim, that its officials had abandoned their old jury selection practices. The State Supreme Court's conclu-

---

[4] *Smith* v. *Texas,* 311 U. S. 128, 132.

[5] *Akins* v. *Texas,* 325 U. S. 398, 403.

[6] *Norris* v. *Alabama,* 294 U. S. 587, 590; *Pierre* v. *Louisiana,* 306 U. S. 354, 358; *Akins* v. *Texas,* 325 U. S. 398, 402; *Fay* v. *New York,* 332 U. S. 261, 272.

[7] *Neal* v. *Delaware,* 103 U. S. 370, 397; *Norris* v. *Alabama,* 294 U. S. 587, 591; *Pierre* v. *Louisiana,* 306 U. S. 354, 361.

sion of justification rested upon the following reasoning. Section 1762 of the Mississippi Code enumerates the qualifications for jury service, the most important of which apparently are that one must be a male citizen and "a qualified elector." Sections 241, 242, 243 and 244 of the State Constitution set forth the prerequisites for qualified electors. Among other things, these provisions require that each elector shall pay an annual poll tax, produce satisfactory proof of such payment, and be able to read any section of the State Constitution, or to understand the same when read to him, or to give a reasonable interpretation thereof. The evidence showed that a very small number of Negro male citizens (the court estimated about 25), as compared with white male citizens, had met the requirements for qualified electors, and thereby become eligible to be considered under additional tests for jury service. On this subject the State Supreme Court said:

"Of the 25 qualified negro male electors there would be left, therefore, as those not exempt, 12 or 13 available male negro electors as compared with 5,500 to 6,000 male white electors as to whom, after deducting 500 to 1,000 exempt, would leave a proportion of 5,000 nonexempt white jurors to 12 or 13 nonexempt negro jurors, or about one-fourth of one per cent negro jurors,—400 to 1. . . . For the reasons already heretofore stated there was only a chance of 1 in 400 that a negro would appear on such a venire and as this venire was of one hundred jurors, the sheriff, had he brought in a negro, would have had to discriminate against white jurors, not against negroes,—he could not be expected to bring in one-fourth of one negro." [8]

---

[8] Although this latter statement was made with particular reference to the special venire from which the petit jury was drawn, the reasoning of the court applied also to its grounds for holding that there was no discrimination in excluding Negroes from the grand jury.

468

The above statement of the Mississippi Supreme Court illustrates the unwisdom of attempting to disprove systematic racial discrimination in the selection of jurors by percentage calculations applied to the composition of a single venire.[9]

The petitioner here points out certain legislative record evidence [10] of which it is claimed we can take judicial notice, and which it is asserted establishes that the reason why there are so few qualified Negro electors in Mississippi is because of discrimination against them in making up the registration lists.   But we need not consider that question in this case.   For it is clear from the evidence in the record that there were some Negroes in Lauderdale County on the registration list.   In fact, in 1945, the circuit clerk of the county, who is himself charged with duties in administering the jury system, sent the names of eight Negroes to the jury commissioner of the Federal District Court as citizens of Lauderdale County qualified for federal jury service.   Moreover, there was evidence that the names of from thirty to several hundred qualified Negro electors were on the registration lists.   But whatever the precise number of qualified colored electors in the county, there were some; and if it can possibly be conceived that all of them were disqualified for jury service by reason of the commission of crime, habitual drunkenness, gambling, inability to read and write, or to meet any other or all of the statutory tests, we do not doubt that the State could have proved it.[11]

We hold that the State wholly failed to meet the very strong evidence of purposeful racial discrimination made out by the petitioner upon the uncontradicted showing that for thirty years or more no Negro had served as a juror

[9] *Akins* v. *Texas,* 325 U. S. 398, 403.

[10] *Hearings before Special Committee to Investigate Senatorial Campaign Expenditures, 1946,* 79th Cong., 2d Sess. (1947).

[11] *Hill* v. *Texas,* 316 U. S. 400, 404–405.

in the criminal courts of Lauderdale County. When a jury selection plan, whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand. As we pointed out in *Hill* v. *Texas,* 316 U. S. 400, 406, our holding does not mean that a guilty defendant must go free. For indictments can be returned and convictions can be obtained by juries selected as the Constitution commands.

The judgment of the Mississippi Supreme Court is reversed and the case is remanded for proceedings not inconsistent with this opinion.

*Reversed.*