18426

Louis BOSTICK, Appellant, v. STATE of South Carolina and Ellis C. MacDougall, Director, South Carolina Board of Corrections, Respondents.

(145 S. E. (2d) 439)

*Messrs. Charles E. Washington,* of Beaufort, and *Jenkins & Perry,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General, E. N. Brandon, Assistant Attorney General,* of Columbia, and *Randolph Murdaugh, Solicitor,* of Hampton, *for Respondents,*

November 30, 1965.

TAYLOR, Chief Justice.

This is an appeal from the Order of the Honorable John Grimball, dated July 3, 1964, denying petitioner's application for writ of *habeas corpus.*

Petitioner was convicted of the murder of the Sheriff of Jasper County and sentenced to death. He appealed and the conviction and sentence were affirmed. *State v. Bostick,* 243 S. C. 14, 131 S. E. (2d) 841. Petitioner thereafter filed a petition for writ of *habeas corpus.* After a hearing on November 18, 1964, this petition was denied, and the petitioner now appeals on several exceptions which raise the issues of (1) whether Negroes were systematically excluded from the Grand and Petit Juries and (2) whether petitioner was denied the benefit of counsel at certain stages

of the proceedings from his apprehension to the time of appointment of counsel, thereby rendering his confession inadmissible.

In the recent case of *Moorer v. State,* 244 S. C. 102, 135 S. E. (2d) 713, this Court had under consideration the question of whether Negroes had been systematically excluded from the Grand and Petit Juries because of race, and this Court stated therein:

"In *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256, and *State v. Middleton,* 207 S. C. 478, 36 S. E. (2d) 742, this Court reviewed the constitutional and statutory law of this State relating to the qualifications of jurors and the method of selecting them. Each juror is required to be a qualified male elector between the ages of 21 and 65 years and of good moral character. The Grand Jury shall consist of 18 members and the Petit Jury shall consist of 12 men all of whom must agree to a verdict in order to render the same. Article 5, Section 22, Constitution of South Carolina. The term 'qualified elector' means 'registered elector'. *State v. Rector,* 158 S. C. 212, 155 S. E. 385; *State v. Grant,* 199 S. C. 412, 19 S. E. (2d) 638; *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256.

"Every registered male elector is a potential and duly qualified juror, and his name may be taken from the Registration Books by the Jury Commission. *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256. The Jury Commissioners are Auditor, Treasurer, and Clerk of Court, Section 38-51, Code of Laws of South Carolina, 1962, and by statute they are required to prepare from the official enrollment books of qualified electors a list containing not less than two-thirds of the electors they deem qualified for jury duty. Section 38-52, Code of Laws of South Carolina, 1962. * * * The Jury Commissioners are required by Section 38-55 to place the name of each person on said list on a separate sheet of paper, each paper to resemble the others as much as possible, and, after folding, to insert same in a container or capsule.

These containers or capsules are then placed in what is known as a 'jury box.'

"In this State it is only required that 12 new men be drawn once a year to serve as Grand Jurors and they, together with 6 hold-over members drawn by lot from the previous Grand Jury, constitute the Grand Jury for that year. Sections 38-401 to 38-405, Code of Laws of South Carolina, 1962. * * *

"As stated in *State v. Waitus, supra,* 224 S. C. 12, 77 S. E. (2d) 256: 'There is certainly no denial of the equal protection of the laws in any of the foregoing constitutional or statutory provisions. *Franklin v.* *State of South Carolina,* 218 U. S. 161, 30 S. Ct. 640, 54 L. Ed. 980; *State v. Middleton, supra,* 207 S. C. 478, 36 S. E. (2d) 742.'

"There are many U. S. Supreme Court decisions holding that discrimination on the basis of race in the selection of persons for service on Grand Jury or Petit Jury panels is in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. *Norris v. State of Alabama,* 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; *Akins v. State of Texas,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692; *Cassell v. State of Texas,* 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839. This does not mean that a jury must be composed of a certain proportion of a particular race in order to assure equal protection of the law. Proportional racial limitations is forbidden and inequality or disproportion in the jury finally selected does not in itself show discrimination. *Akins v. State of Texas, supra,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692. An accused is entitled to have the charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race or color. *Cassell v. State of Texas, supra,* 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839.

"Discrimination in the selection of a jury must be proved; it cannot be presumed, *Tarrance v. State of Florida,* 188 U. S. 519, 23 S. Ct. 402, 47 L. Ed. 572; and a defendant objecting to a Grand or Petit Jury because of alleged discrimination against his race has the burden of establishing such discrimination. *Akins v. State of Texas, supra,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692. However, a defendant may establish a *prima facie* case of discrimination in which case the burden shifts to the State to refute the discrimination and evidence that Negroes have never served on a jury in the county has been held to make a *prima facie* case. *Norris v. State of Alabama, supra,* 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; *Hill v. State of Texas,* 316 U. S. 400, 62 S. Ct. 1159, 86 L. Ed. 1559; *Patton v. State of Mississippi,* 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76.

"Whether there has been systematic racial discrimination by administrative officials in the selection of jurors is a question to be determined from the facts in each particular case, *Patton v. State of Mississippi,* 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76. However, discriminatory selection in prior years does not nullify a present conviction if the selection of the jury for the current term is on a proper basis. 'Former errors cannot invalidate future trials.' *Brown v. Allen,* 344 U. S. 443, 73 S. Ct. 397, 97 L. Ed. 469."

The Clerk of the Jasper County Registration Board testified that the jury box at the time of the Term during which petitioner was tried was made up from the Registration Books as of December 4, 1961. The total number of qualified male electors, between the ages of 21 and 65, was 1230; 974 white and 256 Negro.

The County Auditor, a member of the Jury Commission, testified as to the procedure followed in preparing the jury list. She testified that from all males appearing in the Registration Books from the ages of 21 to 65 those disqualified from jury duty due to statutory disqualification,

death, etc., are disregarded and two-thirds or more of the remaining names are placed on the jury list without any designation of race, and the names are then placed in the box which has three separate locks, each member having a key for only one of the locks.

The Clerk of Court, a member of the Commission for 14 years, testified that during his 14 years at least two-thirds, and sometimes more, of the qualified male electors are placed in the jury box. The Clerk further testified on racial inclusion and exclusion as follows:

"Q. Has the Commission to your knowledge ever made a conscious effort to place at least one Negro juror on the Grand Jury?

"A. No, because we draw them out and we let them hit as they fall. We don't keep rejecting whites until we get a Negro. We don't keep rejecting Negroes until we get a white.

\* \* \*

"Q. And you say just as you never reject any white person from service just because there is a Negro not on there yet the same thing is true on the other side of the corner?

"A. I'll swear to that.

"Q. And you never have no purpose to try to keep Negroes from the jury?

"A. If we pull them out of the box and it happens to hit a colored one, we'll hit it; if it's white, it's white. If they are all one way or all the other."

The names of prospective jurors are not accompanied on the list with designation of race. Racial designation appears on the Registration Books but there is no designation whatever upon the jury list or the capsules in the jury box.

The Senator from Jasper County testified that since 1948 or 1949 when Judge Waring (U. S. District Judge for the Western District of South Carolina) handed down his decision there has been no question as to the exclusion of of Negroes from registration. The Clerk of Court testified

to the same effect. There was no testimony offered to the contrary.

The only testimony indicating otherwise in any manner was that of the witness Bryant who said he had been in attendance at General Sessions Court at least once in each of the preceding 7 or 8 years and recalled no more than one Negro on the Grand Jury which, he thought, was in 1960, and recalled none having served on the Petit Jury.

The Court records show, however, that one Negro was on the Grand Jury which returned a true bill against petitioner in instant case and two Negroes on the panel of Petit Jurors at the Term petitioner was tried.

This question is, therefore, resolved against the contention of petitioner.

Petitioner contends that his Constitutional rights as guaranteed by the Fourteenth Amendment to the United States Constitution were violated by admission into evidence his confessions, thereby depriving him of due process of law.

Petitioner was taken into custody by law enforcement personnel late in the afternoon of the same day that the Sheriff was killed. He was immediately turned over to the chief investigator, J. P. Strom, Chief of The South Carolina Law Enforcement Division. He was placed in the back seat of Chief Strom's car and two other officers got in the front seat, and they proceeded to Rigeland, the County seat.

By this time there were some twelve to fifteen law enforcement officers in the vicinity and a number of citizens, both white and Negro had gathered as is normal under the circumstances. Upon arrival at Ridgeland, Chief Strom and one officer got out of the car to tell a deputy sheriff of the sheriff's death. (The deputy had been away on another matter and had not heard of the death.) While the two were outside the car, another officer, the sheriff of an adjoining county, called to them that the petitioner wished to make

a statement. At that time, which was approximately 30 minutes after his apprehension, the petitioner made his first verbal admission of shooting the sheriff. Petitioner was then carried to Columbia where he remained during the night, either at the penitentiary or the South Carolina Law Enforcement Headquarters (the record is not clear), where he made further statements which were reduced to writing and subsequently introduced into the record at the trial.

The next morning petitioner was brought back to the County seat, arriving there at approximately 10:30 or 11:00 A. M., then to the scene of the slaying where in the presence of Chief Strom, three other law enforcement officers, the Circuit Solicitor and petitioner's father, he was presented to a Magistrate and a warrant issued. The warrant was read to petitioner; he made no statement and entered no plea.

Petitioner now urges that the absence of Counsel during the times mentioned above renders the confessions void and was a denial of due process of law under the principles of *Haynes v. State of Washington,* 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. (2d) 513; *Powell v. State of Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158; *Hamilton v. State of Alabama,* 368 U. S. 52, 82 S. Ct. 157, 7 L. Ed. (2d) 114; *White v. State of Maryland,* 373 U. S. 59, 83 S. Ct. 1050, 10 L. Ed. (2d) 193; *Escobedo v. State of Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. (2d) 977.

In instant case it is uncontradicted that petitioner knew or believed the State would furnish him counsel and that he was repeatedly advised of his right to counsel and of his right to remain silent. Chief Strom testified that he advised petitioner after his apprehension and prior to any statement made by petitioner that he did not have to make a statement, that any statement he did make could be used against him and that he had the right to counsel. He further offered to take him to see his father and mother if he wanted to see them. Chief Strom also testified that he advised petitioner that before he made any statement he would allow him to

phone a lawyer or his parents or that he would call for him or carry him by his house. Petitioner stated that he did not wish to see his parents. Chief Strom further testified that he advised petitioner as to the reason for his apprehension prior to any statements by petitioner. He testified that he again offered to call a lawyer at Columbia prior to the taking of the written confession.

Solicitor Murdaugh testified that at his first meeting with the petitioner, which was the morning after his arrest when the warrant was issued, he advised petitioner of the charge against him and advised him of his right to counsel and to a preliminary hearing, that petitioner was repeatedly advised of his right to counsel and of his right to remain silent, that assistance was offered petitioner in securing an attorney and that he was advised to do so. Counsel was appointed to represent petitioner in the form of three members of the local Bar approximately 10 days before trial and there is no contention that these counsel were appointed too late to adequately prepare for the trial nor is there any contention that their conduct of the defense was at all inadequate.

A review of the authorities cited by petitioner in his brief reveals that they do not support petitioner's contention that he was denied due process of law.

*Powell v. State of Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, does not consider the question of the admissibility of confessions obtained in the absence of counsel. The extent of the holding in that case is that an assignment of counsel "at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case" does not afford the right to counsel required by due process of law.

In *Hamilton v. State of Alabama,* 368 U. S. 52, 82 S. Ct. 157, 7 L. Ed. (2d) 114, the accused had been denied counsel at his arraignment. His conviction was reversed. However, it appeared that in Alabama arraignment is a critical stage

in criminal proceedings. It is there that the defense of insanity must be pleaded; that pleas in abatement must be made; that motions to quash based on defects in the drawing of the Grand Jury must be made. In *White v. State of Maryland,* 373 U. S. 59, 83 S. Ct. 1050, 10 L. Ed. (2d) 193, it was held that the critical stage theory of *Hamilton* governed where accused was not furnished counsel at a preliminary hearing where he pleaded guilty even though no plea was necessary. The Court held that the plea of guilty made the proceeding a "critical" stage.

The record in this case reveals that at no time prior to his arraignment after indictment, when he was represented by counsel, was petitioner required to enter any plea or make any statement. At no time was a preliminary hearing held, since none was requested by petitioner or his attorneys. Indeed, petitioner's attorneys testified that a preliminary hearing was not desired.

In *Escobedo v. State of Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. (2d) 977, the Court said:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U. S. 335, at 342, 83 S. Ct. 792, at 795, 9 L. Ed. (2d) 799, at 804, 93 A. L. R. (2d) 733, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

In instant case there was no denial after request to see counsel; there was, rather, the offer to secure counsel and there was warning of the right to remain silent.

In *Haynes v. State of Washington,* 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. (2d) 513, the accused was held *incommunicado* by the police for sixteen hours during which time he requested several times that he be permitted to call an attorney and to call his wife. His requests were denied and he was told that he would not be allowed to call unless and until he "cooperated" with police and gave a confession.

There is no evidence of threats or promises in the securing of Bostick's confession. The only testimony on the subject is to the contrary.

There is no merit in petitioner's contention that he was arraigned before the magistrate. In South Carolina the magistrate had no power to arraign petitioner. He had the duty and authority to issue the warrant as was done, and this in nowise can be termed an arraignment. In fact, petitioner could not plead before a magistrate in South Carolina. See *State v. White,* 243 S. C. 238, 133 S. E. (2d) 320.

Petitioner's trial counsel testified that they were familiar with the pretrial proceedings and did not raise any Constitutional questions at the trial, that they received no information that the confessions were not freely and voluntarily given and that they could find no evidence that they were not properly taken and for that reason offered no testimony at the trial on the question of voluntariness.

We are of opinion that all exceptions should be overruled and the Order appealed from affirmed, and it is so ordered. Affirmed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.