ETHRIDGE, Chief Justice:
Herman Caston, Jr., appellant, was convicted in the Circuit Court for the First Judicial District of Hinds County of burglary and larceny, and was sentenced to *444 serve a term of seven years in the penitentiary. No real issue is made by appellant as to the sufficiency of the evidence to support his conviction.
Prior to his trial appellant filed a motion to quash the indictment, jury panel and venire on the ground that they were selected by a discriminatory, systematic exclusion of Negroes for jury service. The motion was overruled, and this action of the circuit court presents the issue for determination on this appeal. The motion was heard and the case was tried on July 14, 1969. Hence the jury list for the year 1969-70, compiled by the board of supervisors at its April 1969 meeting, is the one from which the jury was chosen. Miss. Code 1942 Ann. § 1766 (Supp.1968). A deputy circuit clerk assembled the jury list for 1969-70 for the convenience of the board of supervisors. He was directed not to place a name on the list if the person could claim an exemption.
The circuit court excluded from evidence the jury lists for 1966, 1967 and 1968, but permitted them to be offered for identification only, on the ground that since 1965 this district has been complying with the law. However, of course that issue was the one being contested by appellant. It was error to exclude the jury lists for these three preceding years, for whatever evidentiary value they might have. They are now before us and may be considered. Long continued absence or under-representation of Negroes on juries makes a prima facie case of discrimination and shifts the burden to the state to offer evidence to show that such absence or under-representation resulted from something other than purposeful discrimination. Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964); Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965). In the instant case the State offered no evidence, so we can look only to the evidence offered by appellant on his motion to quash.
The First Judicial District of Hinds County is composed of Supervisors’ Districts 1, 4 and 5. The 1960 census figures show that the percentage composition of the First Judicial District of Hinds County is approximately 36.2% Negro and 63.8% white. Since 1960 the population of the county as a whole has increased from 187,-045 in 1960 to 223,910 in 1967. The white population has increased from 112,205 to 126,100, a gain of 13,895. The nonwhite population, however, has increased from 74,840 in 1960 to 97,810 in 1967, a gain of 22,970 nonwhites. Late figures (before the 1970 census)' show that Hinds County as a whole consists of 56.1% white and 43.9% nonwhite, and most of the growth has occurred in the first judicial district.
A tabulation of the jury lists for the years 1966-70 shows the following figures and percentages:

H. T. Ashford, Jr., Circuit Clerk and Registrar for Hinds County, stated that at the request of the Board of Supervisors he submits to the board a list of names in *445 March or April each year for jury selection. This list includes nothing but the names and the precincts, and the board takes the list and uses it as it wishes. Since about 1960 or 1961, the circuit clerk’s office coded the voter registration books for sex and race: “1” is white male, “2” is white female; “3” is colored male; and “4” is colored female. Ashford stated that these codes were used “for the simple reason of selecting a jury, and you are not even supposed to do that * * * However, now we do not show the code on the people who have registered with the Federal registrars.” In March 1969 he instructed his deputies to stop coding any of the new registrants. However, Ashford did not know “for sure” whether his deputy clerks had stopped this coding system, but he thought that they had. Nevertheless, the names which were already coded prior to March 1969 are still coded.
On cross-examination, Ashford stated in general that the jury lists were prepared without regard to race, creed or color, by taking each tenth or twelfth name. However, this numerical method was not uniform, since the particular number might be the name of one who is exempt for age, profession or other reason, and that one would be omitted. Further, in a smaller ward, he might use every fifth or sixth name. Two witnesses made a comparison of the names on the jury list with the voter registration books in order to determine race and sex and the percentages of whites and Negroes on the 1969-70 jury lists.
Mr. Ashford, Circuit Clerk and Registrar, further testified that prior to 1968 male persons on the Federal registrar’s lists were not placed on the jury lists, “because we had no way of knowing if they could read and write.” However, a few were put on the jury list in 1968.
In the instant case, twenty-five jurors were submitted to the state and the defendant for purposes of this trial. Of that number there was one Negro male, one Negro female, two white females, and the other twenty-one jurors were white males. The petit jury which tried the case was composed of one Negro male, one Negro female, two white females, and eight white males.
This case is controlled substantially by the decision in Spencer v. State, 240 So.2d 260 (Miss., October 10, 1970).
The state offered no evidence on the motion to quash.
The disparity between the percentage of Negro population in the First Judicial District, 36.2% as of 1960 (and a higher percentage in later years), and the percentage of those placed on the jury lists, from 6.18% in 1966-67 to 15.16% in 1969— 70 is a prima facie showing of purposeful discrimination on the part of the state, which the state failed to rebut. Long continued absence or under-representation of Negroes on juries raises a prima facie case of discrimination. The state had the burden of proving that the absence or under-representation resulted from something other than purposeful discrimination. It failed to discharge that burden in this case. In fact, the testimony of the circuit clerk that persons registered to vote by a Federal voting examiner, 90.4% of which are Negroes and 9.6% are whites, were substantially excluded from consideration for jury service, is practically an admission of discrimination. Spencer v. State, supra.
Moreover, the coding of the voter registration lists, so that a voter’s race is readily identifiable, except that those who registered since March 1969 have not been so coded, is closely akin to Georgia’s use of racially segregated tax digests as its jury source, which was disapproved in Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). Spencer v. State, supra.
For these reasons, the circuit court erred in refusing to sustain appellant’s motion to quash the indictment, the jury panel, and the jury venire. His conviction is reversed and judgment is entered here sustaining ap *446 pellant’s motion to quash. The case is remanded to the circuit court for further appropriate proceedings.
Reversed and remanded.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.