**Frank HOLIDAY, Petitioner,**

**v.**

**STATE of Tennessee, Respondent.**

Court of Criminal Appeals of Tennessee.[*]

July 10, 1973.

* No application was made to the Supreme Court for writ of certiorari; however, the

Court of Criminal Appeals has recommended the publication of this opinion.

Larry D. Woods, Nashville, for petitioner.

David M. Pack, Atty. Gen., Nashville, Wm. C. Koch, Jr., Asst. Atty. Gen., Tom P. Thompson, Jr., Asst. Dist. Atty. Gen., Nashville, for respondent.

## OPINION

O'BRIEN, Judge.

This defendant was convicted of first degree murder and sentenced to life imprisonment in March, 1968. The judgment was appealed and the conviction affirmed by this court on July 9th, 1969. Certiorari was denied by the Supreme Court on February 16th, 1970. (John Henry Gant and Frank Edward Holiday v. State, Tenn.Cr. App., 466 S.W.2d 518.)

A post-conviction petition was filed on April 4th, 1972, alleging a denial of petitioner's constitutional rights in that the grand jury was illegally selected from a panel which systematically excluded negroes. A demurrer was filed on behalf of the State on the grounds that the allegations contained in the post-conviction petition were insufficient as a matter of law to support the relief prayed. On October 6th, 1972, the issues were argued in the trial court and subsequently an order was entered sustaining the demurrer and dismissing the petition. The matter is before us on appeal from that judgment of the trial court.

The assignments here charge error to the trial court in (1) not voiding the conviction and sentence of petitioner's since the grand jury which returned the indictment systematically excluded members of petitioner's race; and (2) not voiding the conviction and sentence of petitioner since there was no indication in this record of a

valid waiver of petitioner's constitutional guarantee of equal protection.

In the order dismissing the petition the trial court found that this petitioner was represented by retained counsel who were eminently qualified in the practice of criminal law and thoroughly familiar with the constitutional rights involved. That these rights were as well recognized in 1968 as they were on the date of the hearing. It was held that the issues in this case were governed by the rule set forth in Burt v. State, 2 Tenn.Cr.App. 408, 454 S.W.2d 182, to the effect that:

"When the constitutional right asserted was as well recognized at the time of the trial as now, and a procedure for asserting it was prescribed, failure to then assert the claimed right upon the trial waives it and prohibits its subsequent assertion in the post conviction proceeding".

This court has recently ruled on a post-conviction petition in another case filed by this petitioner in which the same allegation was made, that is, that the grand jury was illegally selected from a panel which systematically excluded negroes. (No. 21219, Davidson Law, Holiday v. State). Certiorari was denied in that case by our Supreme Court on April 2nd, 1973. What we had to say there is equally applicable in the case before us. Since our decision in that case, the United States Supreme Court has ruled in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. After a conviction on a guilty plea, Henderson, by post-conviction petition, alleged a constitutional deprivation because of infirmities in the grand jury selection process. The judgment of conviction was affirmed on the premise that the guilty plea represented a break in the chain of events which preceded it in the criminal process, and a defendant may not thereafter raise independent claims relating to deprivation of constitutional rights which antedated the plea, such as infirmities in grand jury selection process.

■ Although the defendant in this case was convicted after trial before a petit jury rather than on a guilty plea, it is clear that the emphasis of the Tollett v. Henderson, supra, ruling applies more forcibly to this case, since the election was made to submit the issues on guilt or innocence to a jury rather than rely on a dilatory plea which could serve only to prolong the trial proceedings.

The excellent brief filed on behalf of this petitioner includes authoritative citations to sustain the argument concerning the unconstitutionality of racially exclusive grand juries. This position cannot be questioned, for it is the law. We do not consider the matter here because the evidence of positive waiver, explicit in the record of the trial proceedings indicate that, with the assistance of competent counsel, knowledgeable in the ways of criminal procedure and cognizant of the rights of this defendant, the election was made to by-pass an objection to the composition of the grand jury in this case as a deliberate, strategic choice precluding defendant from launching a successful collateral attack by post-conviction procedure on this issue.

■ By the second assignment it is argued that there was no indication in this record of a valid waiver of petitioner's constitutional guarantee of equal protection. It is contended that if the indictment was returned by a racially exclusive grand jury in violation of the Fourteenth Amendment there was no jurisdiction to try the petitioner. This contention has been repeatedly refuted by Supreme Court decisions in Tennessee as well as the United States Supreme Court. The Mayor and City Council of Nashville v. Charles Shephard, 62 Tenn. 373; Ransom v. State, 116 Tenn. 355, 96 S.W. 953; Rivers v. State, 117 Tenn. 235, 96 S.W. 956; Pennel v. State, 122 Tenn. 622, 125 S.W. 445; Chairs v. State, 124 Tenn. 630, 139 S.W. 711; Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132; Williamson v. State, 194

Tenn. 341, 250 S.W.2d 556; Kirkendoll v. State, 198 Tenn. 497, 281 S.W.2d 243; McKinnie v. State, 214 Tenn. 195, 379 S.W.2d 214; State v. Johnson, 220 Tenn. 49, 413 S.W.2d 694; Bonds v. State, 220 Tenn. 555, 421 S.W.2d 87; State ex rel. Lawrence v. Henderson, 1 Tenn.Cr.App. 199, 433 S.W.2d 96; Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Tollett v. Henderson, supra.

■■ Nor, do we construe those decisions by the United States Supreme Court which speak of the participation by a defendant, with his counsel, in making decisions of constitutional magnitude in the course of judicial proceedings to mean that a waiver of constitutional rights by a defendant must be spelled out verbatim in every case. The clear lesson of those decisions seems to be that where a deliberate choice is made by a defendant's counsel at trial, which is "within the range of competence demanded of attorneys in criminal cases", Tollett v. Henderson, supra, citing McMann v. Richardson, 397 U.S. at 771, 90 S.Ct. at 1449, that action of trial counsel is binding on the defendant.

■ The decision in this case, required in the court below, whether or not to resort to the dilatory tactic of contesting the composition of the grand jury prior to proceeding to a trial of the issues before a petit jury, is not in the same category with a decision to proceed to trial or to engage in the process of plea bargaining for the purpose of obtaining the most advantageous result possible prior to the entry of a guilty plea. The reasoning is to be seen in the fact that the action of entering a guilty plea as opposed to going to trial is an absolute. A defendant must choose between taking his chances on submitting the issues to a jury or taking benefit of the advantages which may be obtained by admitting his guilt. There can be no doubt that this choice must be made by a defendant, under all circumstances, after the required consultation and advice by competent counsel. Once the decision for trial is made a different situation results and a defendant faces a deep and impenetrable morass filled with pitfalls for passage through which he must depend on his legal counsel as surely as he would be dependent upon the services of a competent guide if he were faced with the same circumstances in a literal sense rather than a figurative one. It is at this point that his "control" of the legal proceedings of necessity are limited to providing his legal counsel with the information, advice, facts and evidence which will enable his attorneys to steer a course most beneficial to his ultimate good exclusive of any decision to be made by him. To tolerate less than this in the conduct of a trial would be a complete violation of the integrity of the criminal process and as completely flagrant a disregard for the life and liberty of an unfortunate defendant as it would be to place him alone in a jetliner far above the earth, traveling at supersonic speed, provided with an instruction book explaining which lever should be manipulated to conduct his safe flight to his destination. To require an attorney to consult with a defendant who, in many instances will be found ignorant and illiterate, and in most if not all instances wholly uneducated and unknowledgeable about the imponderable questions upon which legal judgments must be made in the course of a trial, and to make an implacable and iron clad rule that the decision in these situations must be made by the defendant himself would be as gross a miscarriage of justice as the complete denial of counsel in itself would be. And, to hold that there must be positive evidence of waiver in such cases is equally intolerable. This issue has been settled in this State by the ruling in Arthur v. State, Tenn., 483 S.W.2d 95.

The assignments of error are overruled and the judgment of the trial court affirmed.

MITCHELL, J., concurs.

OLIVER, Judge (dissenting).

The District Attorney General demurred to Holiday's post-conviction petition "on the ground that the allegations contained in such Petition are insufficient as a matter of law to support the relief prayed for."

It is fundamental that a demurrer admits all well-pleaded facts and all reasonable inferences to be drawn therefrom. Couch v. Hall, 219 Tenn. 616, 412 S.W.2d 635; Neese v. Brown, 218 Tenn. 686, 405 S.W. 2d 577; Snow v. Adamson, 215 Tenn. 341, 385 S.W.2d 759; Cash & Carry Lumber Company, Inc. v. Olgiati, 215 Tenn. 287, 385 S.W.2d 115; Scott v. Travelers Indemnity Company, 215 Tenn. 173, 384 S. W.2d 38.

Thus, by its demurrer the State admitted the petitioner's averments of fact that members of his race (Negro) were systematically excluded from the Grand Jury which returned the indictment against him.

It is fundamental that systematic exclusion of Negroes from Grand Jury service because of their race violates the Fourteenth Amendment of the United States Constitution. Patton v. State of Mississippi, 332 U.S. 463, 466, 68 S.Ct. 184, 186, 92 L.Ed. 76, and cases there cited. In Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77, the Court said:

"This Court over the past 50 years has adhered to the view that valid grand jury selection is a constitutionally protected right. The indictment of a defendant by a grand-jury from which members of his race have been systematically excluded is a *denial of his right to equal protection of the laws.*" (Emphasis supplied)

And in Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, wherein systematic exclusion of Negroes from Grand Jury duty was established, the Court said:

"In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is *denied the equal protection of the laws guaranteed by the Fourteenth Amendment* if he is indicted by a grand jury *or* tried by a petit jury from which members of his race have been excluded because of their race.

\* \* \* \* \* \*

"In Patton v. State of Mississippi, 332 U.S. 463, 469, 68 S.Ct. 184, 187, 92 L.Ed. 76, this Court declared, in a unanimous opinion, that 'When a jury selection plan, whatever it is, operates in such way as always to result in *the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group*, indictments *and* verdicts returned against them by juries thus selected cannot stand.' This is essentially the situation here. *True, the judges now serving on the local court testified generally that they had not discriminated against Negroes in choosing grand juries, and had only tried to pick the best available jurors.* But as Chief Justice Hughes said for the Court in Norris v. State of Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074, 'If, in the presence of such testimony as defendant adduced, the mere general assertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of negroes from jury service, the [Equal Protection Clause]— adopted with special reference to their protection—would be but a vain and illusory requirement.'* Compare Reece v. State of Georgia, 350 U.S. 85, 88, 76 S. Ct. 167, 169, 100 L.Ed. 77; Hernandez v. State of Texas, 347 U.S. 475, 481, 74 S. Ct. 667, 671, 98 L.Ed. 866. This is particularly true here where several of the parish judges apparently have never even interviewed a Negro in selecting grand jurors. *We are reluctantly forced to conclude that the uniform and long-continued exclusion of Negroes from*

*grand juries shown by this record cannot be attributed to chance, to accident, or to the fact that no sufficiently qualified Negroes have ever been included in the lists submitted to the various local judges.* It seems clear to us that Negroes have been consistently barred from jury service because of their race." (Emphasis supplied)

In Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), the Court said:

"For over 90 years, it has been established that a criminal conviction of a Negro cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Negroes were excluded by reason of their race. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Neal v. Delaware, *supra* 103 U.S. 370, 26 L.Ed. 567 (1881)."

In Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), the Court reiterated the ancient principle in this way:

"The essence of petitioner's claim is this: that the tribunals which indicted and convicted him were constituted in a manner that is prohibited by the Constitution and by statute; that the impact of that error on any individual trial is unascertainable; and that consequently any indictment or conviction returned by such tribunals must be set aside.

"There can be no doubt that, if petitioner's allegations are true, both tribunals involved in this case were illegally constituted. He alleges that Negroes were systematically excluded from both the grand jury and the petit jury. This Court has repeatedly held that the Constitution prohibits such selection practices, with respect to the grand jury, the petit jury, or both. Moreover, Congress has made it a crime for a public official to exclude anyone from a grand or petit jury on the basis of race, 18 U.S.C. §

243, and this Court upheld the statute, approving the congressional determination that such exclusion would violate the express prohibitions of the Equal Protection Clause. Ex parte Virginia, 100 U.S. 339, 10 Otto 339, 25 L.Ed. 676 (1879). The crime, and the unconstitutional state action, occur whether the defendant is white or Negro, whether he is acquitted or convicted. In short, when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim. (citing many cases).

\*    \*    \*    \*    \*    \*

"These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

\*    \*    \*    \*    \*    \*

"It is in the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce. For there is no way to determine what jury would have been selected under a constitutionally valid selection system, or how that jury would have decided the case. Consequently it is necessary to decide on principle which side shall suffer the consequences of unavoidable uncertainty. See Speiser v. Randall, 357 U.S. 513, 535–536, 78 S.Ct. 1332, 1345–1346, 2 L.Ed.2d 1460 (1958); In re Winship, 397 U.S. 358, 370–373, 90 S.Ct. 1068, 1075–1077, 25 L.Ed.2d 368 (1970) (concurring opinion of Mr. Justice Harlan). In light of the great potential for harm latent in an unconstitutional jury selection system, and the strong interest of the criminal defendant

in avoiding that harm, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants, rather than giving it to too few.

"Accordingly, we hold that, whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law. This certainly is true in this case, where the claim is that Negroes were systematically excluded from jury service. For Congress has made such exclusion a crime. 18 U.S.C. § 243.

" . . . There is of course no question here of justifying the system under attack. For whatever may be the law with regard to other exclusions from jury service, it is clear beyond all doubt that the exclusion of Negroes cannot pass constitutional muster. Accordingly, if petitioner's allegations are correct, and Negroes were systematically excluded from his grand and petit juries, then he was indicted and convicted by tribunals that fail to satisfy the elementary requirements of due process, *and neither the indictment nor the conviction can stand.*" (Emphasis supplied)

So, it is no longer open to question or debatable that a Grand Jury racially segregated systematically and deliberately by excluding members of a race is unconstitutionally constituted and void insofar as proceedings against members of the excluded race are concerned. And it is equally incontestable that an indictment against a member of the excluded race by such an unconstitutional Grand Jury is likewise unconstitutional and void. It could not possibly be otherwise. Obviously, a racially unconstitutional Grand Jury is impotent and incompetent to return a valid indictment against a member of the race whose systematic exclusion therefrom renders it unconstitutional as to them.

"Therefore, it necessarily follows that the indictment of a Negro defendant by a grand jury in a state court from which members of his race have been intentionally excluded solely because of their race is not good, for the reason that as to such Negro defendant it is not a legal grand jury . . ." State v. Covington, 258 N.C. 501, 128 S.E.2d 827. See also State ex rel. Hathaway v. Henderson, 1 Tenn. Cr.App. 168, 432 S.W.2d 503.

It is elementary that an indictment is jurisdictional. "A lawful accusation is an essential element of a common-law trial by jury, either upon indictment for felonies and capital offenses or by information for misdemeanors. Such an accusation is jurisdictional; without it there can be no valid prosecution." So said the Supreme Court of this State in State v. Hughes, 212 Tenn. 644, 371 S.W.2d 445, quoting with approval from Wharton's Criminal Law & Procedure (Anderson) Vol. 4, § 1724, at page 506.

"A valid warrant or indictment is an essential of jurisdiction." State v. Covington, 258 N.C. 501, 128 S.E.2d 827. "A valid indictment returned by a legally constituted grand jury is a jurisdictional requirement." Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129.

Such is the general law. In 22 C.J.S. Criminal Law § 143, pp. 379–380 the rule is thus stated:

"Jurisdiction to try and punish for a crime cannot be acquired by the mere assertion of it, or invoked otherwise than in the mode prescribed by law, and if it is not so acquired or invoked any judgment is a nullity.

"Ordinarily, a formal accusation, which charges some offense known to law, is essential for every trial for crime, without which the court acquires no jurisdiction to proceed, even with the consent of accused, see infra § 147, and where the law requires a particular form of accusation, that form of accusation is essential. . . .

"Jurisdiction to try offenses is ordinarily acquired by an indictment, or in some jurisdictions by an information, and *where the indictment or information is invalid the court is without jurisdiction.*" (Emphasis supplied)

22 C.J.S. Criminal Law § 162, p. 421 states the rule in this language:

"Generally, where accused pleads to the merits of the action, he waives all objections with respect to the court's jurisdiction of his *person.* So, the objection that the court has no jurisdiction of the *person of accused,* whether by reason of some irregularity in the proceedings, or because of some defect in the constitution of the court which does not prevent it from being a de facto court, or for other reasons, is waived by accused pleading not guilty and going to trial, or by pleading guilty, unless accused is properly permitted to withdraw his plea. *However, the objection that the court does not have jurisdiction of the offense or subject matter is not waived by a plea or going to trial, and may be asserted at any time.*" (Emphasis supplied)

A further statement of the rule is found in 27 Am.Jur., Indictments & Informations § 187, pp. 731–732:

"It is the general rule that defects or omissions in the indictment or in the mode of finding the indictment, *which are of such a fundamental character as to make the indictment wholly invalid, are not subject to waiver by the accused. Such fundamental defects or omissions are not waived by failure to raise them by preliminary motion or plea or in some other appropriate manner during the trial or by pleading to the merits.*" (Emphasis supplied)

When an indictment is so fatally defective as to deprive the court of jurisdiction it may be reviewed in habeas corpus proceedings. McCoy v. Pescor, 145 F.2d 260 (8th Cir. 1944), cert. den. 324 U.S. 868, 65 S.Ct. 911, 89 L.Ed. 1423, rehearing denied 325 U.S. 891, 65 S.Ct. 1083, 89 L.Ed. 2004; Knight v. Hudspeth, 112 F.2d 137 (10th Cir. 1940), cert. den. 311 U.S. 681, 61 S.Ct. 62, 85 L.Ed. 439.

In Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (April 17, 1973), the United States Supreme Court completely overlooked that an indictment by an unconstitutionally segregated Grand Jury is void, as that Court has repeatedly held, and that the indictment of Willie Lee Henderson being unquestionably void because of such racial segregation, his conviction was patently void.

For these reasons I am unable to concur in the majority opinion.