Lewis BLACK et al., Plaintiffs-Appellants,
United States of America, Plaintiff-
Intervenor,

v.

Clarence CURB et al., Defendants-
Appellees.

No. 71–2477.

United States Court of Appeals,
Fifth Circuit.

July 3, 1972.

James K. Baker, Birmingham, Ala., Charles Morgan, Jr., Atlanta, Ga., Charles S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., John Mitchell, Atty. Gen., U. S. Dept of Justice, Washington, D. C., Norman Siegel, Atlanta, Ga., for plaintiffs-appellants.

Leslie Hall, Asst. Atty. Gen., William J. Baxley, Atty. Gen., Birmingham, Ala., Richard H. Poelinitz, County Sol., Greensboro, Ala., for defendants-appellees.

Before WISDOM, GODBOLD, and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from an order of the district court approving, without a hearing, the jury list of Hale County, Alabama. We remand the case to the district court.

On February 6, 1970, this Court decided the first appeal in this case.[1] Black v. Curb, 5 Cir. 1970, 422 F.2d 656. In 1965 black residents of Hale County, Alabama, brought a class action in the district court against the county jury commissioners. The plaintiffs alleged systematic exclusion of blacks from the county jury rolls.[2] The district court found "a pattern and practice of exclusion of Negroes from jury service" and ordered relief. Black v. Curb, S.D.Ala., 1966, 261 F.Supp. 542. The district court eventually approved a jury list with 17.9 percent blacks, although, at the time, blacks constituted 62 percent of the eligible population. This Court, on appeal, disapproved the jury list and remanded the case for further proceedings.

On September 23, 1970, after informal attempts to carry out this Court's mandate had failed, the plaintiffs filed a motion with the district court seeking further relief. On November 5, 1970, the district court issued an order enjoining the defendant "from engaging in any act or practice which involves or results in discrimination by reason of race or color in the selection of jurors for jury service in Hale County, Alabama", and outlining procedures for jury selection.[3] The order included a provision allowing plaintiffs' counsel to inspect and copy all records, but it did not

1. The background and procedural history of the case are set out fully in our earlier opinion reported at 422 F.2d 656.

2. The United States intervened as a plaintiff under 42 U.S.C. § 2000h–2.

3. This Court ordered the defendants to refill the jury box according to the following procedure:

   (a) The Clerk of the Jury Commission of Hale County, Alabama, or his successor in office, shall forthwith examine the current Qualified Voters' List of Hale County, Alabama, the current Tax Assessor's List of Hale County, Alabama, and shall compile a comprehensive alphabetical list therefrom to be known henceforth as the "Clerk's Comprehensive List," showing the names and addresses of all listed.

   (b) The Jury Commissioners shall, commencing not later than 30 days from the date of this decree, meet regularly to pass on the qualifications of persons named on the Comprehensive List.

   (c) The Jury Commissioners shall select for the jury roll and jury box from the names so considered not less than 1,250 persons who meet the qualifications prescribed by law and no other.

   (d) At least once every two years the jury commissioners and the clerk of the jury commission shall empty the jury box and refill it according to the procedures set forth in this decree, including the compilation of a new Clerk's Comprehensive List.

provide that the reports required by the order should be served on plaintiffs' counsel.[4]

On May 21, 1971, the district court issued an order approving the previously filed jury list. No hearing was held prior to this approval. And the plaintiffs never received a copy of the list prior to its approval by the court. The population of Hale County, Alabama, is approximately 69 percent black;[5] 60 percent of those adults eligible for jury service under Alabama law are black.[6] The jury list, as approved, contained the names of 1305 persons of whom 460 or 35 percent are black.

## I.

Alabama's jury selection procedure is governed by statute. Ala.Code, Title 30, § 1 et seq. (1958 and 1969 Supp.).[7] The Governor appoints a three-member jury commission from each county. §§ 8–10. The commission employs a clerk who is charged with the duty to "scan the [voter] registration lists, the lists returned to the tax assessor, any city directories, telephone directories and any and every other source of information from which he may obtain information, and to visit every precinct at least once a year" in order to obtain a list "of every citizen of the county over twenty-one and under sixty-five years of age and their occupation, place of residence and place of business". §§ 15–19, 24. From this list, the jury commission compiles a list of eligible, non-exempt jurors and a jury box for use by the judges. §§ 20–24. The jurors may not be under twenty-one years of age, "an habitual drunkard", unfit because "afflicted with a permanent disease or physical weakness", "convicted of an offense involving moral turpitude", unable to read English (unless a freeholder or householder), or over sixty-five years of age (unless "willing" to serve).[8] § 21. In addition, the jurors must be "citizens of the county who are generally reputed to be honest and intelligent men and are esteemed in the community for their integrity, good character and sound judgment". § 21.

It has long been settled that the Equal Protection Clause of the Fourteenth Amendment forbids the systematic exclusion of blacks from jury service. "[D]iscriminating in the selection of jurors . . . against negroes because of their color, amounts to a denial of equal protection of the laws . . ." . Strauder v. West Virginia, 1880, 100 U.S. 303, 25 L.Ed. 664, 666. *See* Ex parte

---

4. This Court ordered the jury commissioners to report to the district court as follows:
   (a) A copy of the Clerk's Comprehensive List, marked by said defendants to show (1) the race of each person on the list, and (2) the names of the persons considered by the jury commissioners pursuant to paragraph No. 2(b) of this decree.
   (b) A separate listing of those persons on the Clerk's Comprehensive List who were considered by the jury commissioners and found by them to be unqualified for jury service; this listing shall also show the person's race and shall give a detailed and specific description of the reason or reasons why each person was found to be unqualified.

5. This figure is from the Advance Report of the 1970 United States Census of which this Court takes judicial notice.

6. This figure is based on the available statistics in the Advance Report of the United States Census.

7. *See* Carter v. Jury Commission of Greene County, 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, upholding the constitutionality of the statutory scheme and explaining its operation in greater detail.

8. *See also* §§ 3–5 as to females:
   When any female shall have been summoned for jury duty she shall have the right to appear before the trial judge, and such judge, for good cause shown, shall have the judicial discretion to excuse said person from jury duty. The foregoing provision shall apply in either regular or special venire.
   § 21. *See also* § 21(1). A blanket exclusion of women was declared unconstitutional in White v. Crook, M.D.Ala. 1966, 251 F.Supp. 401.

Virginia, 1880, 100 U.S. 313, 25 L.Ed. 667; Patton v. Mississippi, 1947, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Carter v. Jury Commission of Greene County, 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 and cases cited in footnotes 8–10; Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (April 3, 1972). Although "neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group", Swain v. Alabama, 1965, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, "token summoning of Negroes for jury service does not comply with equal protection", Brown v. Allen, 1953, 344 U.S. 443, 471, 73 S.Ct. 397, 414, 97 L.Ed. 469.

■ Disproportionate statistics—black population as against black jurors —constitute "a prima facie case of purposeful discrimination". Whitus v. Georgia, 1967, 385 U.S. 545, 551, 87 S.Ct. 643, 647, 17 L.Ed.2d 599, 604. See also Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (April 3, 1972); Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567. "Once a prima facie case of invidious discrimination is established, the burden of proof shifts to the State to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures have produced the monochromatic result". Alexander v. Louisiana, 92 S.Ct. 1221, 1226 (April 3, 1972). See also Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567; Whitus v. Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599. The plaintiffs may, of course, answer the State's rebuttal by establishing that the state officials applied different standards or that excluded individuals possessed requisite qualifications. See Swain v. Alabama,

1965, 380 U.S. 202, 85 S.Ct. 824, 13 L. Ed.2d 759. See generally our previous discussion in Black v. Curb, 5 Cir. 1970, 422 F.2d 656.

II.

In the present case, the figures speak eloquently. While approximately 60 percent of the eligible adults are black, only 35 percent of those on the jury list are black. The figures are more disproportionate than in Turner v. Fouche, supra (60%–37%) or Carter v. Jury Commission of Greene County, supra (65%–32%).

■ The prima facie statistical showing in the present case shifts the burden to the State to "explain the disparity or establish that the excluded persons are not qualified". Black v. Curb, 5 Cir. 1970, 422 F.2d 656, 659. In the present case, the district judge incorrectly placed the burden of proof. By not holding a hearing before approving the list submitted by the jury commissioners, the district judge accepted the commissioners' reasons for disqualifying voters as presumptively correct. In view of the prima facie case of discrimination based on the statistics, the burden is, however, properly on the State to justify the disqualification of the large number of blacks as eligible voters. We must remand the case to the district court for a hearing at which the State must sustain its burden of proof. If practicable, the plaintiffs must be provided, in advance, with copies of lists used by the commissioners (or if this is impracticable, given access to lists) to facilitate rebuttal of the State's proof.

■ One additional comment is in order. The jury commissioners disqualified six hundred and fifty-three potential jurors because they were "unknown" to members of the jury commission.[9]

9. The appellants allege in their brief that: "But an analysis of some 300 of these

persons strongly, if not conclusively, suggests that the characterization of them as

Of these, 80 percent were black. In view of the commissioners' duty to fill the jury rolls with "all citizens of the county" who possess the requisite qualifications, Alabama Code, Title 30 § 21 (1969 Supp.), the commissioners have an affirmative duty to inquire into the eligibility of those citizens unknown to them.

> In the face of the commissioners' unfamiliarity with Negroes in the community and the informality of the arrangement by which they sought to remedy the deficiency in their knowledge upon recompiling the jury list, we cannot assume that inquiry would not have led to the discovery of many qualified Negroes.

Turner v. Fouche, *supra*, 396 U.S. at 360, 90 S.Ct. at 540. *See also* Whitus v. Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Cassell v. Texas, 1950, 339 U.S. 282, 70 S.Ct. 629, 94 L. Ed. 839; Billingsley v. Clayton, 5 Cir. 1966, 359 F.2d 13. "[A]ffirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion". Alexander v. Louisiana, 92 S.Ct. 1226. *See also* Turner v. Fouche, *supra*, 396 U.S. at 361, 90 S.Ct. 532.

The order of the district court approving the jury list is reversed and the cause is remanded for further proceedings consistent with this opinion.

'unknown' was employed not because they were in fact unknown or their identity not readily ascertainable, but rather as a facile device to disqualify a large group of blacks. No other explanation fits the facts: 'Unknown' are long time school teachers and even principals; domestics of local well known families; a Negro, presently under indictment for the rape of a white female; owners of a filling station, grocery store. . . . A high school teacher, whose father drives a school bus, is noted as a non-resident; the maid of the chairman of the Board of Registrars, from whom defendants largely obtained the names making up the Comprehensive List, is noted as unable to serve although she is about 40 years old, is intelligent and physically sound; a county highway employee, actively working, is listed as deceased."